IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TONY D. NAIL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-65-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Tony D. Nail requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born June 1, 1978, and was thirty-two years old at the time of the administrative hearing. (Tr. 25-26). He completed the ninth grade, exclusively taking special education classes, and has worked as a carpenter helper, grounds keeper, laborer, and packer. (Tr. 17, 237). The claimant alleges that he has been unable to work since January 26, 2009 because of ankle problems and Crohn's disease. (Tr. 231).

### Procedural History

The claimant applied on February 4, 2009 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Gene Kelly held an administrative hearing and determined the claimant was not disabled in a written opinion dated November 18, 2010. (Tr. 9-18). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the ability to perform less than the full range of light work as

3

defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk for two hours in an eight-hour workday at one-hour intervals and sit six hours in an eight-hour workday.  The ALJ further found that the claimant could only perform limited climbing and squatting, occasional bending, stooping, kneeling, crouching, or crawling.  As to his right lower extremity, he could only perform limited operation of foot controls, and as to the right upper extremity he could only perform limited pushing and pulling, and he had slight limitations in fingering, feeling, and gripping with the right extremity.  The ALJ imposed the further limitations of avoiding temperature extremes and dampness, rough and uneven surfaces, unprotected heights, and fast and dangerous machinery; requiring easy access to restroom facilities; and that, due to illiteracy, he could perform simple, repetitive, and routine tasks with limited stress and content.  The ALJ noted that the claimant had mild to moderate chronic pain, but found he could remain attentive and could respond and perform routine work.   (Tr. 12).  The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, machine operator or order clerk.  (Tr. 18).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly discuss why the claimant's impairments did not meet a listing, and (ii) by failing to sufficiently identify work he is capable of performing.  The Court finds the claimant's second contention dispositive, and the decision of the Commissioner is therefore reversed.

4

The claimant testified at the administrative hearing as to his limited education, as well as his physical impairments. (Tr. 25-48). The ALJ then asked the vocational expert ("VE") whether there were any jobs available in the regional or national economy that would allow for the restrictions outlined above. The VE responded that examples would be machine operator and order clerk, but noted that the restrictions outlined by the ALJ would result in a 50% reduction in the availability of these two positions. (Tr. 51-55). The VE stated that the job described was consistent with the description in the Dictionary of Occupational Titles ("DOT"), but did not provide the DOT numbers for these two positions. (Tr. 57).

In his written decision, the ALJ adopted limitations that the claimant could perform less than the full range of light work, including the limitations that the claimant could only stand/walk two hours in an eight-hour workday; could only perform limited climbing and squatting, occasional bending, stooping, kneeling, crouching, or crawling; could only preform limited operation of foot controls with his right lower extremity; could only perform limited pushing and pulling and that he had slight limitations in fingering, feeling, and gripping with the right upper extremity; needed to avoid temperature extremes and dampness, rough and uneven surfaces, unprotected heights, and fast and dangerous machinery; that he required easy access to restroom facilities; and that, due to illiteracy, he could perform simple, repetitive, and routine tasks with limited stress and content. (Tr. 12). The ALJ adopted the VE's testimony that the claimant could perform the sedentary jobs of machine operator and order clerk, and stated that the VE's "testimony [wa]s consistent with the information contained in the [DOT]." (Tr.

5

18).  The claimant notes that the neither the VE nor the ALJ referred to DOT numbers for the proposed available positions.  He thus argues that the ALJ erred in relying on the VE's testimony because the VE did not provide sufficient information for the ALJ to properly review and/or adopt his opinion.

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [AlJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 [emphasis added].  Although the VE testified that there was no conflict between his testimony and the DOT, there *is* a conflict that the ALJ was required to resolve.  *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

First, a conflict exists because the ALJ failed to identify specific jobs in the DOT that the Court could review and compare to the imposed limitations.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1270-1271 (10th Cir. 2008) ("The ALJ is obligated to explain conflicts between a VE's testimony and a job description in the DOT, however, and therefore must elicit *enough vocational evidence* for this court to determine whether there is a conflict.") [emphasis added].

Second, a search of the DOT for the job of "machine operator" returns numerous results (*i. e.,* over 700). *See, e. g.*, DICOT §§   After checking a sampling of these positions, a majority appear to require an ability to perform light work and/or the ability to read. *See Herbert v. Barnhart*, 2002 WL 31180762 at *8-9 (D. Kan. Sept. 19, 2002) (reversing and remanding to ALJ, partially because the identified jobs of cashier and ticket seller required frequent reaching, handling, and fingering which appeared to be in conflict with the claimant's RFC restrictions from rapid, repetitive use of hand controls) [unpublished opinion]. The ALJ failed to even identify the specific job referenced by the VE and further failed to ask the VE to reconcile conflicts or clarify how the DOT could apply to the proffered positions, and the ALJ therefore committed reversible error in violation of this court's holding in *Haddock*. *See also Krueger v. Astrue*, 337 Fed. Appx. 758, 760-762 (10th Cir. 2009) (reversing and remanding in part because ALJ failed to resolve conflict between VE's testimony and DOT job descriptions); *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations); *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00-4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"). There appears to be a similar problem with the job of "order clerk" as proffered by the VE. A review of several "order clerk" positions all appear to require a reading level of at least 2, which requires a passing vocabulary of 5,000 to 6,000 words. *See, e. g.*, DICOT §§ 209.567-014 ("Order Clerk, Food and Beverage," requiring, *inter alia*, reading level of 2, with a passing vocabulary of 5,000 to 6,000 words), 249.362-026 ("Order Clerk," requiring, *inter alia*, a

reading level of 3). The ALJ even asked the VE whether this job required the ability to read "to some extent," and the VE replied that it was an unskilled job and that there would not necessarily be a need to read after the claimant had learned how to perform the job. (Tr. 54). The ALJ nevertheless failed in his written opinion to reconcile this job with his finding that the claimant is illiterate because he did not address the claimant's inability to read while he was learning the job, and the ALJ therefore committed error in violation of this court's holding in *Haddock*. Although these unresolved conflicts as to these limitations would have been harmless error if other jobs had been identified that did not pose a conflict, they are not harmless here because there are no other jobs identified. *See Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.") [unpublished opinion].

Unlike the practice in the Fifth Circuit, in *this circuit* the ALJ must resolve any apparent conflict between the VE's testimony and the DOT. *See Burns v. Barnhart*, 312 F.3d 113, 126 n.8 (3rd Cir. 2002) (discussing Circuit split); *compare Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the [VE's] testimony and the DOT in this case . . . the ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so.") *and Jones v. Apfel*, 190 F.3d 1224, 1229-1230 (11th Cir. 1999) ("We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony

'trumps' the DOT."), *with Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995) ("[W]hen expert testimony conflicts with the DOT, the DOT controls.") *and Haddock*, 196 F.3d at 1091 ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should resolve any conflicts between the VE's testimony and the DOT and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 12th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma